IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WAYNE THOMAS BURNLEY,    )<br>    Plaintiff,    )<br>        )<br>v.    )<br>        )<br>WARDEN WALKER, *et al.*,    )<br>    Defendants.    ) | Civil Action No. 7:21-cv-00453<br><br>By: Elizabeth K. Dillon<br>    United States District Judge |

**MEMORANDUM OPINION**

*Pro se* plaintiff Wayne Thomas Burnley, an inmate in the custody of the Virginia Department of Corrections (VDOC), brought this civil rights action asserting claims pursuant to 42 U.S.C. § 1983 against the warden of Dillwyn Correctional Center, Warden Walker, and two medical personnel who worked at Dillwyn—Dr. Ohai and Nurse Practitioner Rhiner. In general terms, Burnley claims that the defendants knowingly allowed him to drink contaminated water and eat contaminated food, which gave him an H. pylori infection.[1] He also alleges that he did not receive appropriate medical care and treatment for his infection. (*See generally* Compl., Dkt. No. 1.)

The three defendants have filed a joint motion for summary judgment, which is pending before the court and addressed herein. (Dkt. No. 27.) The motion seeks summary judgment solely on the grounds that Burnley failed to exhaust his administrative remedies and thus is barred from bringing his claims pursuant to the Prison Litigation Reform Act (PLRA). (Mem. Supp. Mot. Summ. J., 1–2, Dkt. No. 28.) Burnley filed a short, unsworn response to the motion. (Dkt. No. 33.) The matter is thus ripe for disposition.

---

[1] Helicobacter pylori (H. pylori) infection occurs when H. pylori bacteria infect a person's stomach. The bacteria "are usually passed from person to person through direct contact with saliva, vomit, or stool" and "may also be spread through contaminated food or water." Mayo Clinic, *Helicobacter pylori (H. pylori) infection*, https://www.mayoclinic.org/diseases-conditions/h-pylori/symptoms-causes/syc-20356171 (last visited January 4, 2023). The infection is a "common cause of stomach ulcers" and "may be present in more than half the people in the world. Most people don't realize they have H. pylori infection because they never get sick from it." *Id.*

For the reasons set forth below, the court concludes that defendants are entitled to summary judgment because of Burnley's failure to exhaust. Thus, it will grant their motion for summary judgment and enter judgment in their favor.

I. FACTUAL BACKGROUND

**A. VDOC'S Grievance Procedure**

VDOC Operating Procedure (OP) 866.1, Offender Grievance Procedure, is the mechanism used to resolve inmate complaints, and it applies to most aspects of prison life. OP 866.1 requires that, before submitting a formal grievance (also known as a "regular grievance"), the inmate must demonstrate that he has made a good faith effort to resolve the issue informally through the procedures available at the institution to secure institutional services or resolve complaints. Generally, this may be accomplished by submitting an informal complaint to the grievance department, which is then forwarded to the appropriate staff for investigation and response. (L. Kinley Aff. ¶ 6 & Ex. A, Dkt. No. 28-1.)

If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out the appropriate form. Regular grievances generally must be submitted within 30 days from the date of the incident or discovery of the incident. Even if an offender has not received a response to an informal complaint, the offender still must submit the regular grievance within 30 days of the date of the incident or its discovery and can submit the informal complaint receipt as documentation, rather than the informal complaint itself, as is normally required. (*Id.*)

Prior to reviewing the substantive claims of the grievance, prison officials conduct an intake review to ensure that it meets the published criteria for acceptance. In addition to including the informal complaint or receipt, the grievance must raise a grievable issue and may contain only one issue. (*Id.* ¶ 7.) If the grievance does not meet the criteria for acceptance, prison officials complete the intake section of the grievance and return it to the inmate with

2

instructions on how to remedy any problems with it. That should be done within two days of receipt. The inmate may seek review of the intake decision by sending the grievance form to the Regional Ombudsman. There is no further review of the intake decision. (*Id.*)

There are three levels of review for an accepted regular grievance. The Facility Unit Head of the facility in which the inmate is confined is responsible for Level I review, and a response must be issued within 30 days. A dissatisfied inmate may appeal to Level II, which review is conducted by the Regional Administrator, the Health Services Director, the Chief of Operations for Offender Management Services, or the Superintendent for Education. Level II responses must be made within 20 days. For most issues, Level II is the final level of review. The Level II response informs the offender whether he may pursue an appeal to Level III, which is the final level of review. For those issues appealable to Level III, the Deputy Director or Director of VDOC conducts a review of the grievance, and the response must be made within 20 days. (*Id.* ¶ 8.)

Notably, pursuant to OP 866.1, the filing of either an informal complaint or an emergency grievance does not satisfy the exhaustion requirement. Instead, "[a]n offender meets the exhaustion of remedies requirement only when a Regular Grievance has been carried through the highest eligible level of appeal without satisfactory resolution of the issue." (Kinley Ex. A, OP 866.1 § IV(O)(2).) Thus, if a prisoner never submits a regular grievance, or his regular grievance is never properly submitted and rejected at intake, he has not properly exhausted. (*Id.*)

An inmate may file an emergency grievance if he believes that there is a situation or condition which may subject him to immediate risk of serious personal injury or irreparable harm. (Kinley Aff. ¶ 9.) If the issue does not meet this definition of emergency, then that is indicated on the form, signed, and returned to the inmate. If it satisfies this standard, the staff person determines whether he or she can address the issue or it needs to be sent to a higher

authority for resolution. As Kinley explains, "[f]iling an emergency grievance does not satisfy the exhaustion requirement. In order to satisfy the exhaustion requirement, the inmate must submit his complaint by filing a regular grievance with the appropriate informal complaint and appeal it through all available levels." (*Id.*; *see also* Kinley Ex. A, OP 866.1 § IV(O)(2)(a) (stating same).)

**B. Burnley's Failure to Exhaust**

Defendants have presented evidence that Burnley failed to exhaust any of his claims. Specifically, Kinley's affidavit and the supporting documentation reflect that Burnley filed four informal complaints and an emergency grievance related to his claims, from November 14, 2019 through August 2020. (Kinley Aff. ¶¶ 10–20.) He never filed a regular grievance concerning those claims, however, and he did not appeal any regular grievance through all applicable levels of review. Thus, he did not exhaust his administrative remedies as required by VDOC policy. (Kinley Aff. ¶¶ 22–24.)

Burnley's response to the summary judgment motion essentially confirms the facts set forth by Kinley, which is that Burnley filed informal complaints and an emergency grievance about his symptoms of H. pylori and his medical care afterward, but failed to file any regular grievances about these topics, and failed to appeal any grievance to fully and properly exhaust. The limited portion of his response that relates to exhaustion merely states: "I'm sure Dillwyn Corr. Center would want you to just throw out my lawsuit because I didn't appeal my grievance form. When they would turn down my grievance, I would start over with a complaint." (*Id.* at 1.) Nowhere does he argue that he ever filed a regular grievance or appealed through the final level of review.[2]

---

[2] Although the statements in his unsworn response are not considered evidence in opposition to summary judgment, *see United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004), the court would rule in defendants' favor whether it considers them or not.

The court also has considered the statements in Burnley's verified complaint, which the court can treat as facts in opposition to summary judgment, if based on personal knowledge. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (explaining that verified complaints by *pro se* prisoners can be considered as affidavits in opposition to summary judgment when the allegations contained therein are based on personal knowledge). As to exhaustion, the complaint summarily states that Burnley "filed [his] Grievance Process and exhausted [his] Administrative Remedy see Attachments." (Compl. 4.) But the attachments are the informal complaints and emergency grievance. There are no regular grievances and no appeals reflected in those documents.

## II. DISCUSSION

### A. Summary Judgment Standard

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).[3] In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise

---

[3] Internal citations, alterations, and quotation marks are omitted throughout this opinion, unless otherwise noted.

5

properly supported motion for summary judgment." *Id.* at 247–48.  Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor.  *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990).

**B.  Exhaustion under the PLRA**

Defendants ask for summary judgment on the grounds that Burnley failed to exhaust his administrative remedies.  The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reduc[es] litigation to the extent complaints are satisfactorily resolved, and improve[es] litigation that does occur by leading to the preparation of a useful record."  *Jones v. Bock*, 549 U.S. 199, 219 (2007).  "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court."  *Id.* at 211.

Notably, the PLRA requires "proper exhaustion" of available remedies prior to filing suit.  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  "[P]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceeding."  *Id.* at 90–91.  Thus, an inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim.  *Id.* at 90.  Furthermore, district courts may not "excuse a failure to exhaust."  *Ross v. Blake*, 578 U.S. 632, 639 (2016).

A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies.  *Jones*, 549 U.S. at 216.  Once a defendant presents evidence of a

failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, that exhaustion occurred or administrative remedies were unavailable through no fault of the inmate. *See, e.g., Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011); *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011) (unpublished).

Here, the undisputed facts establish that Burnley did not exhaust his claims, and he does not claim that administrative remedies were unavailable. Thus, he has failed to meet his burden, and his claims must be dismissed based on his failure to exhaust.

### III.  CONCLUSION

For the reasons stated above, the court will grant defendants' motion for summary judgment and will enter judgment in their favor. An appropriate order will be entered.

Entered: January 31, 2023.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge